IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TRIAD GUARANTY INC., | : | Chapter 11 |
| Debtor. | : | Bankr. Case No. 13-11452 (MFW) |
| | : | |
| TRIAD GUARANTY INC., | : | |
| Appellant, | : | Adv. Proc. No. 13-51749 (MFW) |
| v. | : | Civ. No. 14-1464 (GMS) |
| TRIAD GUARANTY INSURANCE CORP.,<br>TRIAD GUARANTY ASSURANCE CORP.,<br>AND ANNE MELISSSA DOWLING, ACTING<br>DIRECTOR OF INSURANCE OF THE STATE<br>OF ILLINOIS ACTING AS REHABILITATOR<br>OF TRIAD GUARANTY INSURANCE CORP.<br>AND TRIAD GUARANTY ASSURANCE CORP., | : | |
| Appellees. | : | |

## **MEMORANDUM OPINION**

Presently before the court is the notice of appeal (D.I. 1) filed by the above-captioned debtor, Triad Guaranty Inc. ("Debtor"), of the order entered by the Bankruptcy Court on October 22, 2014, in the above-captioned adversary proceeding (Adv. D.I. 163)[1] (the "Entry of Judgment"), which granted Debtor's motion for entry of judgment in favor of the above-captioned appellees ("Appellees") on Counts I, III, V, VI, VII, and VIII of Debtor's adversary complaint (Adv. D.I. 1) (the "Complaint"), and which incorporated by reference the Bankruptcy Court's prior order, entered June 13, 2014, denying Debtor's motion for summary judgment as to Counts VI and VIII of the Complaint (Adv. D.I. 141) (the "Summary Judgment Order"). For the reasons that follow, the court affirms the Summary Judgment Order and the Entry of Judgment.

---

[1] The docket of *Triad Guaranty Inc. v. Triad Guaranty Insurance Corp., et al.*, Adv. Proc. No. 13-51749 (MFW) (Bankr. D. Del.) is cited herein as "Adv. D.I. ___".

## I.   BACKGROUND

This is a dispute between the Debtor's bankruptcy estate and the rehabilitation estate of its insolvent subsidiary, Triad Guaranty Insurance Corp. ("TGIC"), as members of a consolidated tax group ("Consolidated Tax Group"), over shared rights to use over $700 million in consolidated net operating losses ("NOLs").

### A.  The Parties

Debtor is a Delaware corporation and the corporate parent of a direct wholly owned subsidiary, TGIC.  TGIC is the parent of a direct wholly owned subsidiary, Triad Guaranty Assurance Corp. ("TGAC").  TGIC and TGAC, as Illinois-domiciled mortgage guaranty insurance and reinsurance companies, respectively, are subject to regulatory oversight by the Illinois Department of Insurance.  Effective July 1, 2015, Anne Melissa Dowling became Acting Director of the Department of Insurance of the State of Illinois and Rehabilitator for TGIC and TGAC ("Rehabilitator," and together with TGIC and TGAC, the "Appellees").  (*See* D.I. 18 at ¶ 4.)[2]

Debtor, TGIC, and TGAC are members of the Consolidated Tax Group and are parties to a Tax Allocation Agreement dated February 3, 1994, and amended effective December 7, 2004 (the "TAA"), which reflects the parties' election to file a consolidated federal income tax return pursuant to § 1501 of the Internal Revenue Code ("IRC")[3] and the regulations implementing the IRC (the "Treasury Regulations").  (*See* D.I. 14 at A32 (TAA); A196, ¶ 32 (undisputed facts))  The TAA provides that "[t]he parties recognize by electing to file a consolidated federal income tax return certain benefits will accrue to all members of the [Consolidated Tax] Group.  Therefore, the parties have determined that it is in their best interests to enter into an Agreement to file federal

---

[2] Ms. Dowling replaced the prior Acting Director and was substituted as party to this appeal by order entered July 14, 2015.
[3] Citations to the IRC are to the United States Internal Revenue Code, 26 U.S.C. §§ 101, *et seq.*

income tax returns on a consolidated basis." (*See id.* at A32.)  Every federal tax return filed by Debtor since its inception has been a consolidated tax return filed on behalf of the Consolidated Tax Group. (*See id.* at A3, ¶ 9 (Complaint); A197, ¶ 34 (undisputed facts))

B. The Rehabilitation Order

Beginning in 2007, both TGIC and TGAC began to incur significant net operating losses ("NOLs") as a result of a number of mortgage defaults throughout the country, and by 2012, more than $700 million of NOLs had been generated. (*See* D.I. 14 at A197, ¶ 35.)  On December 11, 2012, the Rehabilitator filed a Complaint for Rehabilitation against TGIC and TGAC in the Circuit Court, Chancery Division of Cook County, Illinois (the "Rehabilitation Court"). (*See* D.I. 14 at A141-42.)  The same day, the Rehabilitation Court entered an order (the "Rehabilitation Order") which included a finding of insolvency as to TGIC, pursuant to which the Rehabilitator took possession and control over all of the assets, liabilities, and operations of TGIC and TGAC. (*See id.*) The Rehabilitation Order provided that TGIC and TGAC "and all other persons and entities having knowledge of this order are enjoined and restrained from . . . doing or permitting to be done any action which might waste the property or assets of [TGIC or TGAC], until the further order of the Court . . ." (*See id.* at A27-28.)  Following the entry of the Rehabilitation Order, TGIC continued its business operations under the supervision and control of the Rehabilitator. (D.I. 14 at A263, ¶ 55, citing Aff. of Michael Gleeson.)  Although TGIC is not writing new insurance policies, it continues to run off existing policies, which remain in force, and it has not destroyed, disposed of, or abandoned its property or assets; nor has it been dissolved or liquidated. (*See* D.I. 19 at 6; D.I. 14 at A263-64, ¶¶ 55-57; *id.* at A320, 57:8-58:11.)  Under TGIC's plan of rehabilitation, certificates of insurance remain in force until they are cancelled or terminated, and

3

TGIC's plan of rehabilitation forecasts that TGIC will collect approximately $271 million in premiums from 2014 to 2020. (*See* D.I. 14 at A264, ¶ 56, citing Aff. of Michael Gleeson at ¶ 5.)

C. The Adversary Proceeding

Six months after the entry of the Rehabilitation Order, on June 3, 2013 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[4]  On August 30, 2013, Debtor filed the Complaint against TGIC, TGAC, and the Rehabilitator, asserting ten counts for declaratory relief, pursuant to 28 U.S.C. § 2201, including relief in the form of: (i) a declaratory judgment that Debtor "has the exclusive right, pursuant to 26 U.S.C. § 165(g)[5] and 26 C.F.R. § 1.1502-80(c),[6] to take a worthless stock deduction with respect to TGIC's stock, and that such right is property of Debtor's estate pursuant to section 541[7] of the Bankruptcy Code" (Count VI); and (ii) "that this Court has exclusive *in rem* jurisdiction over each of the property rights and interests asserted in Counts I through VII that the Court declares are property of the Debtor's estate pursuant to § 541 of the Bankruptcy Code" (Count VIII). (*See* D.I. 14 at A13-14.)

Central to this dispute is that under the IRC, any of the Consolidated Tax Group's NOLs, capital losses, and tax credits (collectively, the "Tax Attributes") may be used by the Consolidated Tax Group to offset future income, thereby reducing tax liability in future tax

---

[4] Citations to the "Bankruptcy Code" are to 11 U.S.C. §§ 101, *et seq.*

[5] Section 165(g) of the IRC authorizes a deduction for a loss from a worthless security, including stock in a corporation. 26 U.S.C. § 165(g)(2)(A).

[6] Treasury Regulation 1.1502-80(c) provides that a subsidiary's stock is not treated as worthless under § 165 of the IRC until immediately before the earlier of the time: (i) the stock is worthless within the meaning of Treasury Regulation 1.1502-19(c)(1)(iii); or (ii) the subsidiary for any reason ceases to be a member of the consolidated tax group. 26 C.F.R. § 1.1502-80(c).  The test of worthlessness under Treasury Regulations 1.1502-80(c)(i) and 1.1502-19(c)(1)(iii) is whether: "All of [the subsidiary's] assets (other than its corporate charter and those assets, if any, necessary to satisfy state law minimum capital requirements to maintain a corporate existence) are treated as disposed of, abandoned, or destroyed for federal income tax purposes (for example, under § 165(a) or § 1.1502-80(c))." *See* 26 C.F.R. § 1.1502-19(c)(1)(iii)(A).

[7] Section 541 of the Bankruptcy Code defines property of the estate.  The commencement of a bankruptcy case creates an estate.  Under paragraph (1) of subsection (a) of section 541, the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case.  The scope of this paragraph is broad.  *See* 11 U.S.C. § 541 (legislative history and comment).

periods.[8] The NOLs can be of great value to the Consolidated Tax Group because NOLs generated by one member can be used to offset otherwise taxable income generated by another member, thereby allowing each of the entities to reduce its federal tax liability using the NOLs to the fullest possible extent under the IRC.[9] The TAA does not explicitly reference the Tax Attributes or explain how they are to be allocated, used, or treated by the members of the Consolidated Tax Group. (*See* D.I. 14 at A32-38.) Debtor contends that because the TAA "does not address the ownership or allocation of the Tax Attributes or alter Debtor's exclusive right to exercise the Tax Rights . . . nor does [it] purport to alter in any way the provisions of the IRC or Treasury Regulations, . . . the [TAA] is irrelevant to the relief sought" in the Complaint (*See id.* at A5, ¶ 11.) Debtor contends that "each member of the Consolidated Tax Group is free to use the NOLs generated by any other member of the group on a first-come, first-serve basis." (*See* D.I. 13 at 6.) Debtor further asserts that it has the exclusive right, *inter alia*, to (i) reattribute to itself some or all of the NOLs otherwise allocable to TGIC in the event TGIC were to deconsolidate[10] from the Consolidated Tax Group, and (ii) take a worthless stock deduction with regard to its stock in TGIC. (*See* D.I. 14 at A4, ¶ 10.)

However, the effect of a parent of a wholly owned subsidiary taking a worthless stock deduction may be to eliminate the subsidiary's ability to use the NOL carryforward. *See, e.g., In re Prudential Lines, Inc.*, 928 F.2d 565, 574 (2d Cir. 1991). Here, Appellees argue that disposal of the TGIC stock could effect a "change in ownership" within the meaning of 26 U.S.C. § 382,[11] resulting in the NOLs "no longer be[ing] available for use to TGIC going forward." (*See*

---

[8] *See* 26 U.S.C. §§ 172 and 1502.

[9] *See* 26 C.F.R. §§1.1502-21(b) & (e).

[10] *See* 26 C.F.R. § 1.1502-36(d)(6)(i)(B). Deconsolidation would occur if Debtor no longer owned TGIC's stock and could destroy the NOLs for the entire Consolidated Tax Group. (*See* D.I. 20 at B57, 5/28/14 Hr'g. Tr. at 16:18-23.)

[11] A "change in ownership" is deemed to have occurred if a greater than 50 percent shareholder takes a worthless stock deduction, but retains the stock at the end of the taxable year. *See* 26 U.S.C. § 382(g)(4)(D). Here, such a

5

D.I. 14 at A220, n.14.)  This point is not in dispute; Debtor conceded at oral argument that, if it did abandon TGIC's stock in order to take the worthless stock deduction, the result would be to deny TGIC the right to use the NOLs.  (*See* D.I. 20 at B57, 5/28/14 Hr'g. Tr. at 16:18-23 (Court: "If the debtor takes a worthless tax deduction can TGIC continue to use the however many millions of consolidated NOLs that exist as of this date?" Debtor's counsel: "I don't believe the Treasury Regulations would allow TGIC to do that in that circumstance, Your Honor, and that is operation of law.")

    D.  The Summary Judgment Order and Entry of Judgment

    On October 3, 2013, Appellees filed a motion to dismiss the adversary proceeding (Adv. D.I. 20, 21.)  Following the Bankruptcy Court's ruling on the Motion to Dismiss, Counts VI and VIII of the Complaint remained, as did four other counts (together, the "Remaining Claims").[12] On January 27, 2014, Debtor filed a motion for summary judgment solely with respect to Counts VI and VIII of the Complaint.  (Adv. D.I. 88, 89; D.I. 14 at A178.)  Appellees opposed the motion, contending that the Debtor had failed to establish a present right to take a worthless stock deduction, and even if Debtor could have established such a right, the Rehabilitation Order enjoined the Debtor from doing so.  (*See* D.I. 14 at A277.)  Appellees further argued that while Debtor has a shared interest in the NOLs with TGIC and TGAC, any such interest was subject to the Rehabilitation Order as of the Petition Date, and the Rehabilitation Order's injunction against waste precluded Debtor from abandoning TGIC's stock and taking a worthless stock deduction. (*See id.* at A277-82.)

---

change in ownership would trigger a limitation on TGIC's use of NOLs and reduce the available carryforwards to zero.

[12] In its Order on Appellees' motion to dismiss, the Bankruptcy Court dismissed Counts II and IV.  (*See* Adv. D.I. 70.)  Those dismissed claims are not part of this appeal.  The Remaining Claims are Counts I, III, V, VI, VII, and VIII.

Following briefing and oral argument, the Bankruptcy Court entered the Summary Judgment Order denying Debtor's motion for summary judgment on Counts VI and VIII of the Complaint. The Bankruptcy Court found disputed issues of material fact existed as to (i) whether the TGIC stock is worthless or can be deemed worthless within the meaning of § 165 of the IRC and Treasury Regulation 1.1502.80(c)(i); and (ii) whether Debtor had a present right to abandon the stock pursuant to § 554 of the Bankruptcy Code and the relevant provisions of the IRC. (*See id.* at A726-27, ¶¶ 2-3). The Bankruptcy Court further held that even if Debtor had demonstrated a right to either take a worthless stock deduction or abandon the TGIC stock, such actions were precluded by the Rehabilitation Order's injunction against waste. (*See id.* at A727, ¶¶ 4-5.) The Bankruptcy Court further determined that Debtors' proposed interpretation of the Rehabilitation Order constituted an improper collateral attack on the Rehabilitation Order and that the IRC does not preempt the Illinois Insurance Code[13] or the Rehabilitation Order entered thereunder. (*Id.* at A727-28, ¶¶ 7-8.)

Based on the Bankruptcy Court's ruling that the Rehabilitation Order precluded any attempt by Debtor to take a worthless stock deduction or abandon the TGIC stock, Debtor asserted that it could not recover on any of the Remaining Claims in the Complaint and filed a motion for entry of judgment in Appellees' favor on the Remaining Claims. (*See* Adv. D.I. 149.) The Bankruptcy Court signed the Entry of Judgment on October 22, 2014. Debtor filed its notice of appeal on November 5, 2014.

## II.   PARTIES' CONTENTIONS

Debtor argues that the Bankruptcy Court misapprehended the relief sought in the Complaint, and the genuine issues of material fact it identified were not material to Counts VI and

---

[13] Citations to the Illinois Insurance Code are to 215 ILCS 5/187, *et seq.*

VIII. Debtor further argues that the Bankruptcy Court's interpretation of the Rehabilitation Order was (i) improper because it failed to avoid a conflict between state and federal law when an interpretation that presented no constitutional question was otherwise available, and (ii) erroneous because it forced federal law to yield to a state court order in violation of the Supremacy Clause. Debtor further argues that the Bankruptcy Court erred in concluding that its conflict preemption argument constituted an improper collateral attack on the Rehabilitation Order because Debtor merely sought construction of the Rehabilitation Order and never challenged its validity.

Conversely, Appellees assert that the Entry of Judgment should be affirmed because there were material factual disputes regarding whether Debtor satisfied the statutory prerequisites for taking a worthless stock deduction for, or abandoning, TGIC's stock. Even if Debtor had established the statutory prerequisites, Appellees argue that the Bankruptcy Court correctly held that property of Debtor's estate did not include an unfettered "exclusive right to take a worthless stock deduction" as alleged in the Complaint, and Debtor's ability to take a worthless stock deduction and/or abandon TGIC's stock was circumscribed by the Rehabilitation Order's injunction against waste of TGIC's assets. Appellees argue that the Bankruptcy Court correctly found that the fact the Illinois Insurance Code (or the Rehabilitation Order) may have some effect on Debtor's interests in the NOLs is insufficient to conclude that it is preempted by the IRC, and that Debtor's preemption argument constituted an improper collateral attack on the Rehabilitation Order challenging the validity or impermissible vagueness of the order.

III.    JURISDICTION AND STANDARD OF REVIEW

A. Jurisdiction

The court has appellate jurisdiction from all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). As an initial matter, Appellees challenge the court's

jurisdiction to hear the appeal, arguing the "bankruptcy court's denial of summary judgment in Debtor's favor on Counts VI and VIII of its Complaint was an interlocutory decision that would generally not be appealable." (*See* D.I. 19 at 8 (citing *Walker v. Horn*, 286 F.3d 705, 709 (3d Cir. 2002)). However, this argument ignores the fact that the Summary Judgment Order was followed by the Entry of Judgment, which was a decision on the merits of each of the claims based upon the Bankruptcy Court's interpretation of the Rehabilitation Order.

In the Summary Judgment Order, the Bankruptcy Court held that there were genuine disputes of material fact that precluded summary judgment on Counts VI and VIII. (*See* D.I. 14 at A726-27, ¶¶ 2-3.) The Bankruptcy Court further held that, even if Debtor had established the statutory requirements to abandon TGIC's stock and take a worthless stock deduction, the declaratory relief sought in Counts VI and VIII of the Complaint was precluded by the Rehabilitation Order's injunction against waste of TGIC's assets. (*See id.* at ¶ 5.) In the Entry of Judgment, the Bankruptcy Court determined that "[t]he Rehabilitation Order precludes the Debtor from taking any action that would adversely affect TGIC's interest in the consolidated NOLs." (*See id.* at A743, ¶ 13.) The Entry of Judgment refers to Debtor's concession "that the Court's determinations in the Summary Judgment Order concerning the effect of the Rehabilitation Order means there is no possibility for the Debtor to obtain judgment on any of the Remaining Claims" (*see id.* at A742, ¶ 8) and Debtor's agreement that, "if the judgments entered pursuant to this Order are affirmed on appeal, Debtor could not obtain any relief it sought in its Complaint, and no further proceedings would occur with respect thereto" (*see id.* at A742, ¶ 11). Thus, the Bankruptcy Court entered judgment on all of the Remaining Claims in Appellees' favor based on its interpretation of the Rehabilitation Order as precluding any of the declaratory relief sought in the Complaint.

(*See id.* at A745-46.)   The interpretation of a court order is a conclusion of law.[14]   The Entry of Judgment was not an interlocutory order but rather a final judgment on all counts of the declaratory relief sought in the Complaint.

Appellees further argue that the order was not final within the meaning of 28 U.S.C. § 1291.  Whether a decision is final for purposes of § 1291 generally depends on whether the decision by the court below "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *See Caitlin v. United States*, 324 U.S. 229, 233 (1954).  "The finality requirement in § 1291 evinces a legislative intent that restricting appellate review to final decisions prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy."  *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 471 (1978) (internal citations and quotations omitted).  Appellees argue that Debtor sought entry of judgment against itself on all of the Remaining Claims, including those which do not involve the worthless stock deduction – in order to "evade [28 U.S.C.] § 1291's requirement of finality . . . for the purpose of effectuating piecemeal appeals." (*See* D.I. 19 at 8.)  Appellees argue that jurisdiction is not appropriate because only Counts VI and VIII were addressed in the briefing and oral argument below, and the Bankruptcy Court did not rule on the other Remaining Claims in the Summary Judgment Order. (*See* D.I. 19 at 8.)

In support of this argument, Appellees cite *Federal Home Loan Mortgage Corp. v. Scottsdale Insurance Co.*, 316 F.3d 431, 440 (3d Cir. 2003).  In order to accelerate the defendant's appeal of summary judgment on one count of a complaint, the plaintiff in *Scottsdale* dismissed the

---

[14] *See U.S. v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) ("The interpretation of the text of a court order or judgment is considered a conclusion of law subject to de novo review on appeal"); *Holland v. New Jersey Dept. of Corrections*, 246 F.3d 267, 277 (3d Cir. 2001) (interpretation of consent order is matter of law subject to de novo review on appeal); *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) (bankruptcy court interpretation of confirmation order is conclusion of law subject to de novo review on appeal); *Employers of Wausau v. Browner*, 52 F.3d 656, 666 (7th Cir. 1995) (interpretation of environmental clean-up order is a conclusion of law subject to plenary review on appeal).

remaining counts without prejudice to reinstate those claims if the summary judgment decision was reversed. *See id.* at 437-38. On appeal, the Third Circuit held that, because any disposition of the appeal other than affirmance would have returned the reinstated claims to the lower court, the parties had executed "an inappropriate end run around jurisdictional rules" and dismissed the appeal for lack of jurisdiction. *See id.* at 439-40 ("litigants should not be able to avoid the final judgment rule without fully relinquishing the ability to further litigate unresolved claims") (internal citations and quotations omitted).

Appellees' reliance on *Scottsdale* is misplaced. Unlike *Scottsdale*, where claims dismissed without prejudice were subject to reinstatement in the lower court following appeal, here, no claims were dismissed, and the Bankruptcy Court has entered a final judgment on the merits with respect to each of the Remaining Claims. Appellees contend that, like *Scottsdale,* any disposition of this appeal other than affirmance on all counts will lead the parties to return to the Bankruptcy Court to litigate; thus, Debtor's appeal threatens the time and resources of both parties. (*See* D.I. 19 at 8-9). This analysis is incorrect. "True, litigation will continue in cases where a court of appeals reverses and remands a case, but in those circumstances the lower court has already ruled on the merits of the case." *See Union Oil of California v. John Brown E&C*, 121 F.3d 305, 309 (7th Cir. 1997). The critical inquiry is whether a decision on the merits has occurred. *See id.* at 309. The Bankruptcy Court ruled on the merits in finding, as a matter of law, that the Rehabilitation Order "precludes the debtor from taking any action that would adversely affect TGIC's interest in the consolidated NOLs" and thus precludes any of the relief sought in the Complaint. (*See* D.I. 14 at A742-43.) The Summary Judgment Order and Entry of Judgment "end[ed] the litigation on the merits," and the court has jurisdiction over the appeal. *Caitlin,* 324 U.S. at 233.

11

B.   Standard of Review

In reviewing a bankruptcy court's denial of summary judgment, the court applies a plenary standard of review to legal determinations. *Biase v. Congress Fin. Corp. (In re Tops Appliance City, Inc.)*, 372 F.3d 510, 513 (3d Cir. 2004); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Under that standard, courts look to whether the record demonstrates "a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Courts must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).

C.   Summary Judgment

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a).

IV.   DISCUSSION

Debtor appeals from the Entry of Judgment, which incorporated the Summary Judgment Order denying Debtor's request for declaratory judgment (i) that Debtor has "the exclusive right, pursuant to 26 U.S.C. § 165(g) and 26 C.F.R. § 1.1502-80(c), to take a worthless stock deduction with respect to TGIC's stock, and that such right is property of the Debtor's estate pursuant to § 541 of the Bankruptcy Code" (D.I. 14 at A13) (Count VI); and (ii) "that this Court has exclusive *in rem* jurisdiction over each of the property rights and interests asserted in Counts I through VII that the Court declares are property of the Debtor's estate pursuant to § 541 of the Bankruptcy Code" (*id.* at A14) (Count VIII). On appeal, Debtor asserts two main arguments in support of its

12

contention that the Bankruptcy Court erred in denying summary judgment on Counts VI and VIII of the Complaint.  First, Debtor asserts that the Bankruptcy Court erred in denying summary judgment because the Bankruptcy Court has exclusive jurisdiction over the property of Debtor, Debtor's worthless stock deduction constitutes property of the estate pursuant to § 541 of the Bankruptcy Code, and there were no genuine issues of material fact in dispute to prevent summary judgment.  Second, Debtor asserts that the Bankruptcy Court erred in its interpretation of the Rehabilitation Order by failing to interpret it in accordance with controlling precedent, by determining that state law trumped federal law, and by finding that Debtor's interpretation was a collateral attack on the Rehabilitation Order.

### A.  The Bankruptcy Court Did Not Err in Determining that Genuine Issues of Material Fact Precluded Summary Judgment

Court VI of the Complaint sought very specific declaratory relief in the form of a judgment that Debtor "has the exclusive right, pursuant to 26 U.S.C. § 165(g) and 26 C.F.R. § 1.1502-80(c), to take a worthless stock deduction with respect to TGIC's stock, and that such right is property of the Debtor's estate pursuant to section 541 of the Bankruptcy Code." (*See* D.I. 14 at A13.)  The Bankruptcy Court determined that, to the extent that Debtor sought a ruling on a hypothetical worthless stock deduction that Debtor might or might not take, that issue was not ripe for adjudication. (*See* D.I. 14 at A726, ¶ 1.)   The Bankruptcy Court further determined that, to the extent that Debtor sought a ruling on its present right to take a worthless stock deduction, genuine disputes of material fact precluded summary judgment, including whether the stock was "worthless" as a matter of law and met the standards for abandonment. (*Id.* at ¶¶ 2-3.)

### i.  Failure to Establish Stock is Worthless

The Bankruptcy Court determined that "[c]onditions to the right to take a worthless stock deduction under Section 165 of the [IRC] and related Treasury Regulations include demonstrating

that the stock is worthless" and "[b]ased on the record before the Court, there are genuine disputes of material fact as to whether the TGIC stock is worthless or can properly be deemed to be worthless within Section 165 of the Internal Revenue Code and Treasury Regulation 1.1502.80(c)(i) and (ii)." (D.I. 14 at A726, ¶ 2; *see* D.I. 20 at B127, 5/28/14 Hr'g. Tr. at 86:25.)

Whether stock is worthless under § 165(a), is a question of fact on which Debtor has the burden of proof and requires consideration of all pertinent facts and circumstances. *See Favia v. C.I.R.*, 2002 WL 1332810, *2 (T.C. 2002) (taxpayer not entitled to worthless stock deduction upon failure to demonstrate security was worthless); *Boehm v. Commissioner*, 326 U.S. 287, 292 (1945) (noting determination of whether stock is worthless "requires practical approach, all pertinent facts and circumstances being open to inspection and consideration"). Debtor argues that the worthlessness of TGIC's stock is "undisputed;" however, the record reflects this material fact is disputed. Debtor cites a finding in the Rehabilitation Order as to TGIC's insolvency and argues that this is evidence that TGIC's stock is worthless. As the Bankruptcy Court observed, that the Rehabilitation Order "contained a finding that TGIC was insolvent does not, by itself, demonstrate that the TGIC stock is worthless as a matter of law." (*See* D.I. 14 at A726, ¶ 2.)

A finding of insolvency alone is not conclusive evidence of worthlessness under the IRC or Treasury Regulations. In order to support a worthless stock deduction, the claimed loss must be evidenced by "closed and completed transactions" and fixed by "identifiable events," all of which actually occurred during the taxable year. *See In re Steffen*, 294 B.R. 388, 393 (Bankr. M.D. Fla. 2003). The corporation must also demonstrate by a preponderance of the evidence that, during the taxable year, the stock became worthless by ceasing to have both current liquidation value and potential future value. *See id.* "As long as the stock has any value whatsoever, either present or potential, a taxpayer may not claim a deduction." *Id.* Although courts look to events such as

14

bankruptcy or cessation of operations to help identify the date on which the stock lacks potential future value, a single identifiable event is rarely sufficient to conclude that stock is worthless. *See id.* ("The mere fact that a company has filed bankruptcy, became insolvent, or was placed in receivership is not enough to establish a total loss of the value of the stock"); *Brimberry v. C.I.R.*, 588 F.2d 975, 978-79 (5th Cir. 1979) (insolvency insufficient to support a finding of worthlessness); *Taghadoss v. C.I.R.*, T.C. Summ. Op. 2008-44, at *4-*5 (T.C. 2008) (stock not worthless despite insolvency, cancellation of securities under plan of reorganization, stockholder's abandonment of his securities, and closing of transfer books). Debtor failed to demonstrate the stock became worthless by ceasing to have both current liquidating and potential future value.

Debtor has failed to demonstrate worthlessness under the Treasury Regulations as well. Treasury Regulation § 1.1502-80(c) provides that a subsidiary's stock is not treated as worthless until the earlier of the time that the stock is: (i) worthless within the meaning of Treasury Regulation § 1.1502-19(c)(1)(iii); or (ii) the subsidiary ceases to be a member of the tax group in question. The test of worthlessness is satisfied only when all of the subsidiary's assets are treated as disposed of, abandoned, or destroyed. *See* 26 C.F.R. § 1.1502-19(c)(1)(iii). The parties do not dispute whether all of TGIC's assets have been disposed of, abandoned, or destroyed or whether TGIC remains a member of the Consolidated Tax Group.

ii.  Failure to Establish Abandonment

The Bankruptcy Court determined that: "A separate condition to the existence of the Debtor's asserted right to take the worthless stock deduction is Debtor's abandonment of the TGIC stock . . . Debtor has failed to prove that it has abandoned or that it has the present right to abandon the TGIC stock." (D.I. 14 at A726, ¶ 3.) Noting that, under the IRC, the requirements for abandonment are somewhat different than the requirements set forth in § 554 of the Bankruptcy

Code, the Bankruptcy Court held that even if § 554 were the standard, "the record before the Court reveals genuine disputes of material fact as to whether Debtor's continued ownership of the TGIC stock is burdensome to Debtor's estate or has inconsequential value to the estate." (D.I. 14 at A726-27, ¶ 3; D.I. 20 at B128, 5/28/14 Hr'g. Tr. at 87:5-15.) The Bankruptcy Court declined to find that TGIC's stock was a burden to the estate based on Debtor's argument that litigation over the tax rights had stalled the Chapter 11 case. (*See* D.I. 20 at B128, 5/28/14 Hr'g. Tr. at 87:9-15 ("[S]imply stating that [the] bankruptcy is bogged down because this issue is not decided does not show a burden. The debtor came into bankruptcy knowing of the rehabilitation order and [t]hese issues . . . The debtor has no operations so continuing in bankruptcy other than litigating this issue is not necessarily a burden.")) The Bankruptcy Court further determined that there was a genuine issue of material fact as to whether the stock was of inconsequential value. (*See id.* ("The debtor presently as part of the consolidated group has an interest in NOLs, and I'm not prepared to state that being part of that consolidated group has no value based on the record before me.")) *See id.* at 87:18-21.) Debtor does not argue on appeal that it has requested that the Bankruptcy Court approve abandonment of its stock in TGIC or that it could satisfy the criteria for abandonment under § 554 of the Bankruptcy Code or otherwise under the IRC. (*See* D.I. 13 at 11 n.18.) The court agrees that Debtor has failed to demonstrate a present right to abandon the stock.

Debtor's right to take a worthless stock deduction is conditional and dependent upon Debtor meeting the prerequisites under § 165 of the IRC and Treasury Regulation 1.1502-80(c). In light of Debtor's failure to carry its evidentiary burden to establish these prerequisites, and the existence of genuine issues of material fact as to each, it is clear that Debtor is not entitled to judgment, as a matter of law, that it "has the exclusive right, pursuant to 26 U.S.C. § 165(g) and

26 C.F.R. § 1.1502-80(c), to take a worthless stock deduction with respect to TGIC's stock." The court finds no error in the Bankruptcy Court's denial of summary judgment on this basis.

    iii.  Materiality

Against this deficiency, Debtor argues that the disputed facts identified by the Bankruptcy Court were not material to the declaratory relief sought in Counts VI and VIII of the Complaint and would have been material only if, through the Complaint, Debtor "sought to exercise its worthless stock deduction or sought a declaration that the elements necessary to take a worthless stock deduction had been satisfied." (*See* D.I. 13 at 11.) Debtor argues it sought only a judicial declaration that it possessed the tax deduction as part of the property of its estate and that the Bankruptcy Court – and not the Rehabilitation Court – had jurisdiction over that property to decide issues of abandonment and/or worthlessness. (*See id.*) Thus, Debtor argues that the Bankruptcy Court's determination, that genuine issues of fact remained concerning the worthlessness and abandonment of TGIC's stock, was both premature and irrelevant to the declaratory relief Debtor sought in Counts VI and VIII. (*See id.*)

However, the relief sought in the Complaint clearly exceeds the Debtor's characterization of that relief on appeal. As the Bankruptcy Court observed in its ruling: "[T]he debtor is not simply asking me to find or state the legal proposition that only a parent can take a worthless stock deduction for its sub-stock. That is apparent. What the debtor is asking me is to rule that this debtor does have the exclusive right to take a worthless stock deduction for its ownership in TGIC, and that that is property of the estate. [T]hat issue is not ripe here." (*See* D.I. 20 at B127, 5/28/14 Hr'g. Tr. at 86:17-24.) Meeting the statutory prerequisites is material to a finding, as a matter of law that, Debtor has the exclusive right to take a worthless stock deduction with respect to TGIC's stock. Unless Debtor is able to satisfy the statutory predicates, it is not entitled to a declaration

17

that it has a present right to take a worthless stock deduction. *See Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593 (1943) ("burden of clearly showing the right to the claimed deduction is on the taxpayer"); *Mulholland v. United States*, 28 Fed. Cl. 320, 331 (Fed. Cl. 1993) (taxpayer must establish entitlement to a specific deduction by a preponderance of evidence); *Steffen*, 294 B.R. at 393 (same).

Debtor attempts to recharacterize the relief sought in the Complaint to avoid the materiality of the statutory requirements. As noted by Appellees, the Complaint seeks a declaratory judgment that Debtor "*has* the exclusive right . . . to take a worthless stock deduction" with respect to TGIC's stock (*i.e.*, a present right) and that the Bankruptcy Court *has* exclusive *in rem* jurisdiction over such right (*see id.* at A13-14 (emphasis added)). Debtor later argued that it was seeking a declaratory judgment that it had "the right to take such a deduction in a *future* tax return" (*i.e.*, a future right). (*See* D.I. 20 at B11, n. 6 (emphasis added); *id.* at B45-47, 5/28/14 Hr'g. Tr. at 4-6). On appeal, Debtor now appears to assert that the relief it sought was a determination that *if* Debtor has the right to take a deduction *in the future*, that right would, at that point, be property of its estate (*i.e.*, a contingent right). (*See* D.I. 13 at 7, ¶ 1, citing *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006)). With respect to Debtor's argument that it was seeking a declaratory judgment that it had "the right to take such a deduction in a *future* tax return," the court agrees that this issue is not ripe. (*See* A726, ¶ 1.) Similarly not ripe for adjudication is a request for declaratory judgment that *if* Debtor has the right to take a deduction *in the future*, that right would, at that point, be property of its estate. *See Grace Holdings L.P. v. Sunshine Mining & Ref. Co.*, 901 F. Supp. 853, 858 (D. Del. 1995) (courts should not adjudicate "contingent future events that may or may not occur as anticipated, or indeed may not occur at all") (internal citations and quotations omitted). Notwithstanding these attempts to recharacterize the declaratory relief sought, Debtor

is not entitled to summary judgment based on its failure to establish the statutory prerequisites, each of which are material to determining, as a matter of law, that Debtor has the exclusive right to take a worthless stock deduction.

The court finds no error in the Bankruptcy Court's determination that, because there are genuine issues of material fact, Debtor is not entitled to judgment as a matter of law that Debtor has the exclusive right to take a worthless stock deduction; that Debtor's alleged right to take a worthless stock deduction cannot be property of the Debtor's estate if Debtor cannot establish the statutory requirements to taking the deduction; and the issue of whether the Debtor may have the right to take the worthless stock deduction in the future was not ripe for adjudication.

B. The Bankruptcy Court Did Not Err in its Interpretation of the Rehabilitation Order[15]

i. Injunction Against Waste

The Rehabilitation Order provided that TGIC and TGAC "and all other persons and entities having knowledge of this order are enjoined and restrained from . . . doing or permitting to be done any action which might waste the property or assets of [TGIC or TGAC], until the further order of the Court." (*See* D.I. 14 at A27-28.) In interpreting the Rehabilitation Order, the Bankruptcy Court found that "[a]s of the date that Debtor initiated these bankruptcy proceedings . . . , TGIC had a property interest in the Net Operating Losses ("NOLs") generated by the Triad Consolidated Tax Group. Debtor's right to take any action diminishing or eliminating TGIC's interests in the NOLs was circumscribed by the provisions of the Rehabilitation Order [against waste]" (D.I. 14 at A727, ¶ 4; D.I. 20 at B129, 5/28/14 Hr'g. Tr. at 88:7-11.) The Bankruptcy Court further

---

[15] The Bankruptcy Court denied summary judgment based on its determination that genuine issues of material fact existed regarding whether Debtor was entitled to the declaratory relief sought in Counts VI and VIII of the Complaint. Although the Bankruptcy Court's interpretation of the Rehabilitation Order was an additional basis for denying the relief sought in Counts VI and VIII of the Complaint, it was the basis for the Entry of Judgment on the Remaining Claims. The court reviews the Bankruptcy Court's conclusion of law accordingly.

determined "[i]t is clear that, if Debtor were to take a worthless stock deduction relative to the TGIC stock and or abandon its interest in the TGIC stock, TGIC's ability to utilize over $700 million in NOLs would be diminished or eliminated and, therefore, such actions would constitute a waste of TGIC's property in violation of the Rehabilitation Order." (D.I. 14 at A727, ¶ 5; D.I. 20 at B128-29, 5/28/14 Hr'g. Tr. at 87:21-88:4.) Therefore, "even if Debtor had demonstrated a right to either take a worthless stock deduction or abandon the TGIC stock, the Rehabilitation Order precludes Debtor from taking a worthless stock deduction for its ownership of the TGIC stock and or abandoning the TGIC stock." (*See* D.I. 14 at A727, ¶ 5.)

Debtor advances several arguments in support of its contention that the Bankruptcy Court erred in interpreting the Rehabilitation Order to preclude Debtor from taking its worthless stock deduction and/or abandoning the TGIC stock. Debtor asserts that, as parent of the Consolidated Tax Group, Debtor has the sole right to use the group's NOLs to the exclusion of TGIC. (*See* D.I. 14 at A4.) Debtor argues that the Bankruptcy Court's interpretation of the term "waste" was without evidentiary support, overly broad, and should have been interpreted to exclude Debtor's tax deduction. (*See* D.I. 13 at 14-15.) Finally, Debtor argues it was not a party to the rehabilitation proceedings and there is no indication that the Rehabilitation Order applies to the Debtor, its property, or its federal tax deductions. (*See id.* at 20.)

With respect to Debtor's argument that, as the parent of the Consolidated Tax Group, it has the sole right to use the group's NOLs to the exclusion of TGIC (*see* D.I. 14 at A5, ¶ 11 (referring to Debtor's "exclusive right to exercise the tax rights")), the Bankruptcy Court disagreed, citing the Second Circuit's decision in the *Prudential* case. (*See* D.I. 20 at B129, 5/28/14 Hr'g. Tr. at 88:12-21.) In *Prudential*, a subsidiary member of a consolidated tax group generated significant NOLs prior to filing its Chapter 11 case. *See Prudential*, 928 F.2d at 566-67. Its non-debtor

corporate parent argued that, as the parent of the consolidated tax group, it had sole right to use

the NOLs, and that the debtor-subsidiary, having consented to join the group, thereby lost any

interest in the NOLs. The Second Circuit rejected this argument, concluding that the debtor-

subsidiary had a property interest in the NOLs attributable to its pre-bankruptcy operations:

> The fact that a subsidiary's NOL ultimately may be used to offset another
> corporation's income does not mean that the subsidiary loses any interest in its
> NOL. The common parent acts as an agent on behalf of all the members of the
> consolidated group for the convenience and protection of the IRS only. The
> corporations retain their separate identities and the property interests of the
> subsidiaries are not absorbed by the common parent. It follows that a corporation
> does not lose any interest it had in the right to use its NOL to offset income because
> of its status in a group of affiliated corporations that file a consolidated tax return.

*See id.* at 571 (internal citations and quotations omitted). Thus the bankruptcy court enjoined a

non-debtor parent from taking a worthless stock deduction because it would adversely affect the

debtor's property interest in the NOLs. Although the converse is true here, the court agrees with

the Bankruptcy Court that the *Prudential* case has direct application. Even though NOLs have

been used to offset the taxable income of the other members of the Consolidated Tax Group, TGIC

retains its property interest in the NOLs. Because the worthless stock deduction would adversely

affect TGIC's interest in the NOLs as a member of the Consolidated Tax Group, Debtor is enjoined

by the terms of the Rehabilitation Order.

Moreover, Debtor's interests in the NOLs were limited as of the Petition Date. "Filing for

bankruptcy does not create new property rights or value where there previously were none." *In re*

*Majestic Star Casino, LLC*, 716 F.3d 736, 751 (3d Cir. 2013) (internal citations and quotations

omitted). "Consequently the estate is determined at the time of the initial filing of the bankruptcy

petition." *Id.* Here, the scope of Debtor's property rights is determined as of the Petition Date and

pursuant to applicable non-bankruptcy law. *See id.* (scope of debtor's property rights "is

determined at the time of the initial filing of a bankruptcy petition"); *Butner v. United States*, 440

U.S. 48, 54 (1979) ("determination of property rights in the assets of a bankrupt's estate [is left] to state law").  Whatever rights Debtor may have had to abandon TGIC's stock and take a worthless stock deduction, Debtor did not exercise those rights prior to the entry of the Rehabilitation Order, and its ability to do so thereafter was limited by the Rehabilitation Order's injunction against "any action which might waste the property of assets of [TGIC]."  (D.I. 14 at A27-28.)  The Bankruptcy Court cannot alter that limitation.  As the Bankruptcy Court observed, "I think what is lost in the debtor's arguments is that the debtor's rights as of the petition date are only those it has as of the petition date.  And as of the petition date its rights were limited by the rehabilitation order."  (*See* D.I. 20 at B129, 5/28/14 Hr'g. Tr. at 88:22-25.)  The court agrees.  The Bankruptcy Court's interpretation of the Rehabilitation Order is consistent with its determination that TGIC retained its interest in the NOLs, and Debtor's right to abandon TGIC's stock and/or take a worthless stock deduction – both of which would have diminished or eliminated TGIC's interest in the NOLs – was limited as of the Petition Date.  The court finds no error with this conclusion.

Nor is the court persuaded by the Debtor's argument that the Bankruptcy Court's interpretation of "waste" in the Rehabilitation Order was unsupported or overly broad.  Although not defined in the Illinois Insurance Code, the Bankruptcy Court construed "waste" according to common canons of construction and consistent with its ordinary dictionary meaning: "to diminish by constant loss; use up; consume . . . squander."  (*See* D.I. 19 at 17 (quoting Webster's Third New International Dictionary 2580 (1981)); *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276 (2009) (term left undefined by statute carries its ordinary meaning)).  Debtor argues there was no evidentiary support for such an interpretation, as "[t]here is no evidence that the Rehabilitation Court at any point translated the term 'waste' in a manner similar to the Bankruptcy Court's interpretation, or that [Appellees]

(who were all parties to the [r]ehabilitation proceedings) had proffered a definition of the term 'waste' to the Rehabilitation Court that is similar to the Bankruptcy Court's interpretation." (*See* D.I. 13 at 19.)

Debtor's argument is unpersuasive. There is no dispute that Debtor's taking of a worthless stock deduction would effect a "change in ownership" of TGIC under the relevant Treasury Regulations, and trigger a limitation on TGIC's use of the NOLs, thus causing TGIC's interest in NOLs to be diminished or eliminated. (*See* D.I. 20 at B57, 5/28/14 Hr'g. Tr. at 16:18-23.) Thus, the Bankruptcy Court's determination that the diminution or elimination of TGIC's ability to utilize the NOLs to offset future income and decrease tax liability would necessarily constitute a waste of TGIC's property is supported by the plain meaning of "waste" and also consistent with the Illinois Insurance Code, from which the text of the Rehabilitation Order is taken almost verbatim. The statute was intended to prevent waste of assets and preserve assets for benefit of policyholders. *See* 215 ILCS 5/189. Thus, the court finds no error in the Bankruptcy Court's interpretation that the Rehabilitation Order prohibited abandonment of the TGIC stock or the worthless stock deduction.

Debtor further argues that the Bankruptcy Court erred in interpreting the Rehabilitation Order to preclude the taking of a worthless stock deduction because there is no indication that the Rehabilitation Order applies to the Debtor. (*See* D.I. 13 at 20.) In support of this argument, Debtor contends that there is no evidence that the Rehabilitation Court, when entering the Rehabilitation Order, contemplated or considered the Debtor's federal tax rights. Debtor further contends that it was not a party to the rehabilitation proceedings, and there is no indication on the face of the Rehabilitation Order that it applies to the Debtor's property, assets, or federal tax deductions.

The fact the Rehabilitation Order does not specifically address the tax rights is beside the point. The court agrees with the Bankruptcy Court that "[t]o be effective an injunction does not have to list every possible action that a party can take that would violate the injunction." (*See* D.I. 14 at A727, ¶ 6.) When analyzing injunctive language, the test is whether, given the totality of the circumstances, a reasonable person can understand what conduct is enjoined. *See In re W.R. Grace & Co.*, 475 B.R. 34, 95 (D. Del. 2012). Moreover, injunctive language should not be read in a vacuum, divorced from the context and understandings of the parties. Here, it is clear from the context of the insolvency proceedings that the Rehabilitation Order is intended to prevent the waste of assets of an insolvent entity. The prohibition against waste is broadly drafted, but such a sweeping injunction "is permissible if it is clearly necessary to protect the assets" of an insolvent entity. *See W.R. Grace*, 475 B.R. at 96. Indeed, more specific language is itself problematic because '[i]f narrow literalism is the rule of interpretation, injunctions will spring loopholes." *See Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 906 (7th Cir. 1995); *Alley v. Dept. of Health & Human Servs.*, 590 F.3d 1195, 1206 (11th Cir. 2009).

Likewise, the fact that Debtor was not a party to the rehabilitation proceedings or specifically mentioned in the Rehabilitation Order gives the court little pause. The Rehabilitation Order mentions no party specifically (*see* D.I. 14 at A20-29). An injunction need not list every party. Courts have held that questions of interpretation of injunctive relief should be resolved "in order to prevent unfair surprise." *See e.g., Schering*, 62 F.3d at 906. Here, there is no argument that the Debtor was unfairly surprised by the Rehabilitation Order. The record clearly reflects that the Debtor was aware of the rehabilitation proceedings, received drafts of the complaint for rehabilitation and the Rehabilitation Order prior to its entry, and did not oppose either.[16] As

---

[16] *See* D.I. 14 at A386, 222:4-224:8 (deposition testimony of Kenneth Jones, CEO and CFO of both Debtor and TGIC from 2008 through 2012 and a member of both boards from 2009 through 2012); *id.* at A660 (Debtor's board

observed by the Bankruptcy Court, "[i]t was clear to the Debtor that entry of the Rehabilitation Order would prohibit the Debtor from taking a worthless stock deduction or abandoning the TGIC stock." (*See* D.I. 14 at A727, ¶ 6.)  On its face, and given the totality of the circumstances, the Rehabilitation Order is fairly read as prohibiting the Debtor from abandoning TGIC's stock and/or taking a worthless stock deduction – actions which would diminish or eliminate TGIC's interest in the NOLs.  The court finds no error in the Bankruptcy Court's interpretation of the injunction against waste.

ii.  Avoidance of Constitutional Conflict

Debtor further argues the interpretation of the Rehabilitation Order was erroneous because the Bankruptcy Court first "adopted an interpretation, in violation of binding precedent, that created a constitutional question (*i.e.*, was the state court order preempted by federal law)" (*see* D.I. 13 at 12) and then incorrectly resolved the constitutional conflict by holding that state law trumped federal tax law (*see id.* at 8, 12).  Specifically, Debtor argues that the Bankruptcy Court erred in interpreting the word "waste" to mean "any action which would diminish or eliminate TGIC's interest in the NOLs" and holding that the tax deduction was therefore prohibited by the Rehabilitation Order.  This interpretation, Debtor argues, "unnecessarily pitted the Rehabilitation Order against federal law in violation of binding precedent." (*See id.* at 8.)  Debtor argues that long standing precedent required the Bankruptcy Court to adopt an interpretation of the Rehabilitation Order that "avoided a constitutional conflict" and that the Bankruptcy Court should have done so by choosing not to interpret the word "waste" so broadly as to include Debtor's right

---

presentation referencing prior drafts of complaint for rehabilitation and proposed Rehabilitation Order); *id.* at A326, 82:15-84:3 (deposition testimony of William T. Ratliffe, III, Debtor's chairman, president, and CEO at the time that the Rehabilitation Order was entered, and also a board member of TGIC).

to take the worthless stock deduction. (*See id.* at 14.) Debtor cites *Black v. Cutter Laboratories*, 351 U.S. 292 (1956) in support. (*See id.*)

According to Appellees, the Bankruptcy Court's interpretation did not create a "constitutional conflict" or "pit the state court order against federal law" because Debtor did not have an "unfettered, exclusive right" to take a worthless stock deduction under the IRC in the first place. (*See* D.I. 19 at 3.) Appellees argue that the Bankruptcy Court properly construed the term "waste," consistent with its ordinary dictionary meaning, and the Bankruptcy Court was not required to construe the definition of "waste" narrowly to avoid a constitutional question that did not exist. (*See* D.I. 19 at 17.)

In *Black*, the Supreme Court examined a California state court opinion, which reversed an arbitration board decision reinstating an individual dismissed from her employment because she was an active member of the Communist party and had falsified her employment application. *See Black*, 351 U.S. at 296. The state court's opinion reversing the arbitration board's decision contained broad statements to the effect that reinstating the employee would violate state public policy. *See id.* at 297. Certiorari was granted to "determine . . . precisely the ground on which the judgment rests" and whether a federal question was presented. *See id.* at 298-99 ("This means no more than we should not pass on federal questions discussed in [an] opinion where it appears that the judgment rests on adequate state grounds.") The Supreme Court found that, despite the state court's broad public policy statements, its ruling clearly rested on its finding that the employee's Communist party membership constituted "just cause" for discharge under a collective bargaining agreement and its conclusion that the doctrine of waiver was inapplicable based on the employee's continuing membership in the party. *See id.* at 299. In conclusion, the Supreme Court noted that

"even if the State Court's opinion be considered ambiguous, we should choose the interpretation which does not face us with a constitutional question." *Id.* at 299-300.

Notwithstanding that this statement may well be *dicta*, *Black* is not controlling here because the court does not find any ambiguity in the Rehabilitation Order. Nor does the court find that the Rehabilitation Order "may fairly be construed" to permit the abandonment of TGIC's stock and/or the taking of a worthless stock deduction. *See Arizona v. United States,* 132 S. Ct. 2492, 2510 (2012) ("So far as statutes *may fairly be construed* in such a way as to avoid doubtful constitutional questions they should be so construed; and it is presumed that state laws will be construed in that way by state courts") (emphasis added) (internal citations and quotations omitted)). The Rehabilitation Order is not ambiguous in precluding any action that would waste TGIC's assets. As it was not ambiguous, the Bankruptcy Court interpreted "waste" consistent with common rules of construction, in accordance with its ordinary meaning. *See Crawford*, 555 U.S. at 276. Although Debtor argued that the Rehabilitation Order's injunction against waste was not intended to affect any third party's rights – and thus could not affect Debtor's right to take a worthless stock deduction – the Bankruptcy Court declined to adopt such an interpretation as fair or logical construction of the Rehabilitation Order. (*See* D.I. 20 at B52-57, 5/28/14 Hr'g. Tr. at 11:11-16:23 (Court: "Aren't you eliminating the injunction completely then?")) The court agrees that the Rehabilitation Order is not ambiguous. Thus, the Bankruptcy Court was not required by *Black* to construe the definition of "waste" narrowly. The court finds no error in the Bankruptcy Court's interpretation of the Rehabilitation Order which was consistent with common rules of construction and the purpose of the Illinois Insurance Code to preserve assets for the benefit of policy holders.

27

C. Conflict Preemption

Debtor's main argument on appeal is that the Bankruptcy Court, having chosen an interpretation of "waste" that precluded Debtor's taking of a worthless stock deduction and created a constitutional question, ". . . then violated the Suprem[acy] Clause by permitting state law to trump federal law." (*See* D.I. 13 at 12.) Debtor argues that the Bankruptcy Court's interpretation of the Rehabilitation Order conflicted with Debtor's federal right to abandon TGIC's stock and take the worthless stock deduction, thus the Bankruptcy Court incorrectly determined that a state court order trumped federal tax law in violation of the Supremacy Clause. (*See id.* at 15-16.) Conversely, Appellees assert that Debtor has mischaracterized the Bankruptcy Court's ruling, which did not hold that state law trumped federal law. (*See* D.I. 19 at 17.) Appellees argue that although Debtor has attempted to "fabricate[s] a tension between state insurance law and federal tax and bankruptcy law," the Bankruptcy Court correctly held that the various statues comfortably occupy different legal fields, none preempting the others. (*See id.* at 11.)

The Bankruptcy Court held: "[t]he Supremacy Clause is inapplicable here because the Illinois Insurance Code on which the Rehabilitation Order is based almost verbatim does not address an area of law that is preempted by the Internal Revenue Code or Bankruptcy Code. The fact that the Rehabilitation Order or the Illinois Insurance Code has some effect on Debtor's alleged rights is insufficient to conclude that the Rehabilitation Order or the Illinois Insurance Code is preempted." (D.I. 14 at A728, ¶ 8.)

"The preemption doctrine is a necessary outgrowth of the Supremacy Clause, which provides that the laws of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Lozano v. City of Hazleton*, 724 F.3d 297, 302 (3d Cir. 2013) (internal citations and quotations omitted). In order to

determine whether the IRC preempts the Illinois Insurance Code, the court must determine which preemption theory is applicable. *See Green v. Asset Fund Mgmt., L.P.*, 245 F.3d 214, 221-22 (3d Cir. 2001). Preemption may be either express or implied. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Preemption is "express" when there is an explicit statutory command that state law must be displaced. *See e.g.*, 29 U.S.C. § 1144(a) (Employee Retirement Income Security Act of 1974, stating that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . ."). Implied preemption includes both "field preemption" and "conflict preemption." *See Gade*, 505 U.S. at 98. Field preemption applies to displace a state law "where a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *See id.* State law may also be displaced under "conflict preemption" principles: (i) when it is impossible to comply with both the challenged state and the federal law, or (ii) when the challenged state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress. *See Arizona*, 132 S. Ct. at 2501.

Debtor contends that the Bankruptcy Court's interpretation of the Rehabilitation Order stands as obstacle to Congress's objective for a "uniform application of a nation-wide scheme of taxation."[17] (*See* D.I. 13 at 16 (citing *Lythe v. Hoey*, 305 U.S. 188, 194 (1938)). In analyzing conflict preemption claims, "what is a sufficient 'obstacle' is a matter of judgment to be informed by examining the federal statute as a whole and identifying the purpose and intended effects." *Arizona*, 132 S. Ct. at 2501 (citing *Crosby*, 530 U.S. 363, 373 (2000)). Indeed, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *See Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal citations and quotations omitted). "Additionally, we must begin

---

[17] Debtor does not argue under the doctrine of conflict preemption that it is impossible for Debtor to comply with both state and the federal law.

our analysis by applying a presumption against preemption." *See Holk v. Snapple Beverage Corp.*, 575 U.S. 329, 334 (3d Cir. 2009). "The Supreme Court has held on multiple occasions that, when analyzing preemption issues, 'because the States are independent Sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action.'" *Green*, 245 F.3d at 223-24 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996)). "We start with an assumption that the historic police powers of the States will not be preempted unless that was the 'clear and manifest purpose of Congress.'" *Medtronic*, 518 U.S. at 485. Where the law at issue is in an area of traditional state regulation, "we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *See Holk*, 575 U.S. at 334 (citing *Bates v. Dow Agrosciences*, 544 U.S. 431, 449 (2005)).

The insurance industry is clearly an area of traditional state regulation. Congress enacted the McCarran-Ferguson Act ("MFA"), which provides that "No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." *See* 15 U.S.C. § 1012(b). The MFA was intended "to restore the supremacy of the States in the realm of insurance regulation." *U.S. Dept. of Treasury v. Fabe*, 113 S. Ct. 491, 500 (1993) (a state's insurance liquidation statute is protected from federal interference by the MFA to the extent that it serves to ensure that policyholders ultimately receive payment on their claims).

Article XIII of the Illinois Insurance Code governs the rehabilitation, liquidation, conservation, and dissolution of insurance companies. Its purpose is to preserve assets for the benefit of policyholders. *See* 215 ILCS 5/187; *Lincoln Towers Ins. Agency, Inc. v. Boozell*, 684 N.E.2d 900 (Ill. App. Ct. 1997) (observing Illinois Insurance Code is "designed to provide a

comprehensive, orderly and efficient procedure for liquidating insurance companies while protecting the rights of interested parties" and "intended to protect individual policyholders and other claimants without permitting certain classes of creditors to place themselves in a superior position"). The rationale for creating statutory procedures for liquidation of insurance companies is to provide a means of marshaling the assets of an insolvent company and distributing them under court supervision. *See id.* (citing *Fabe v. Facer Ins. Agency, Inc.*, 588 F. Supp. 1330, 1333 (C.D. Ill. 1984)). Thus, the Illinois Insurance Code permits the Rehabilitation Court "issue such ... injunctions or enter such other orders as may be deemed necessary to prevent waste of assets" (*see* 215 ILCS 5/189), and vests the Rehabilitator with possession of all of the insolvent insurer's property, contracts, and rights of action" (*see* 215 ILCS 5/191). Because the insurance industry is an area of traditional state regulation, and the Illinois Insurance Code provisions underlying the Rehabilitation Order are part of that state's insurance regulatory scheme, ". . . we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *See Holk,* 575 U.S. at 334.

The parties disagree as to what is required to show that Congress has made such an intention to supplant state law "clear and manifest." Appellees argue that Debtor, as the party claiming preemption, has the burden of proof on Congress' intent to preempt the area of insurance regulation. (*See* D.I. 19 at 18, citing *Green,* 245 F.3d at 230.) Appellees assert that Debtor has not carried its burden of proof, as Debtor has cited no legal authority for the proposition that Congress intended that IRC and its provisions relating to the worthless stock deduction preempt the Illinois Insurance Code. Conversely, Debtor argues that an express statement of preemptive intent is not required to conclude that conflict preemption applies. Debtor relies on *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), in which the Supreme Court noted that

conflict preemption turns on the identification of "actual conflict" and not on an express statement

of preemptive intent by Congress:

> While pre-emption fundamentally is a question of congressional intent, this Court traditionally distinguishes between "express" and "implied" pre-emptive intent, and treats "conflict" pre-emption as an instance of the latter . . . [T]he Court has never before required a specific, formal agency statement identifying conflict in order to conclude that such a conflict in fact exists . . . To insist on a specific expression of agency intent to pre-empt, made after notice-and-comment rulemaking, would be in certain cases to tolerate conflicts that an agency, and therefore Congress, is most unlikely to have intended.

*Geier*, 529 U.S. at 884-85. In accordance with the Supreme Court's guidance in *Geier*, the court

agrees that a formal statement of preemptive intent is not necessary in order to conclude that an

actual conflict exists and triggers conflict preemption. Thus, the court considers whether an actual

conflict exists between the Illinois Insurance Code and the purposes and objectives of the IRC.

Debtor argues that in enacting the IRC, Congress intended to give "uniform application of

a nation-wide scheme of taxation" and argues that the Bankruptcy Court's interpretation of the

Rehabilitation Order as precluding a taxpayer from taking an otherwise permissible tax deduction

is an actual conflict with Congress's objective of imposing a "uniform" system. (*See* D.I. 13 at

16-17; D.I. 21 at 9-10.) Debtor relies on *Barnett*, arguing that if the intent of a federal statute is

to permit an action, but a state law prohibits the action, then the state law is considered to be

conflict-preempted and cannot stand. *See Barnett Bank of Marion County, N.A. v. Nelson*, 517

U.S. 25 (1996).

Conversely, Appellees argue that Debtor has not met its burden of identifying any actual

conflict. Appellees argue that the Illinois Insurance Code and the Rehabilitation Order are not

state tax laws that occupy the same legislative space as the IRC, nor do they directly conflict with

any provision of the IRC. (*See* D.I. 19 at 18-19.) Appellees contend that neither the Illinois

Insurance Code nor the Rehabilitation Order are preempted merely because they may have an

economic effect on Debtor or indirectly touch upon Debtor's federal rights. (*See id.*) Appellees further contend that courts have refused to find that the IRC preempts state law and orders merely because of an alleged effect on a taxpayer's rights under the IRC. (*See* D.I. 19 at 19, citing *Remington v. United States*, 1998 WL 796753, *2 (N.D. Tex. Sept. 1, 1998) (IRC did not preempt state law requiring partners to be individually liable for partnership debts); *Laub v. Ross*, 818 F. Supp. 340, 342-43 (S.D. Fla. 1993) (taxpayers may seek indemnification from third parties under state law notwithstanding prohibition of same under IRC); *see also, State v. Howard*, 92 Wash. App. 1018 (1998) (state court order compelling party to sign consent form for release of IRS records was not preempted by specific IRC provision); *In re Estate of Mundell*, 857 P.2d 631, 633 (Idaho 1993) (Idaho community property laws with respect to IRAs were not preempted by IRC); *Singer v. Dickinson*, 588 N.E.2d 806 (Ohio 1992) (IRC did not preempt state court authority to allocate federal tax exemption to non-custodial parent)).

Examining the IRC as a whole, and identifying its purpose and intended effects, the court observes that, in addition to establishing a uniform system of taxation, the IRC: grants a consolidated group of affiliated corporations "the privilege of making a consolidated income tax return;"[18] contemplates that each member of such a consolidated tax group may have rights in tax attributes such as NOLs;[19] does not create or govern property rights as between the members of the consolidated tax group;[20] does not foreclose that those property rights may be set forth in a tax allocation agreement that is necessarily governed by state law;[21] and permits, but does not require,

---

[18] *See* 26 U.S.C. §§ 1501.

[19] *See* 26 C.F.R. §§ 1.1502-21(b) (providing that NOLs generated by one member can be used to offset otherwise taxable income generated by another member).

[20] *See United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) (holding IRC creates "no property rights but merely attaches consequences, federally defined, to rights created under law"); *Estate of Gibbs v. United States*, 161 F.3d 242, 246 (3d Cir. 1998) (holding that in applying IRC, "state law controls in determining the nature of the legal interest which the taxpayer had in the property.")

[21] *See In re Bob Richards Chrysler Plymouth Corp., Inc.*, 473 F.2d 262, 264 (9th Cir. 1973) (tax allocation agreements are controlled by state corporate law, not federal tax law).

a taxpayer meeting certain statutory requirements to abandon stock and take a worthless stock deduction.[22] Examining section 165(g) of the IRC, which permits worthless securities deductions, and identifying its purpose and intended effects, it seems that this section defines what may qualify as a security, the time period in which the security must become worthless, and when it will be treated as a loss. *See* 26 U.S.C. § 165(g). Although a worthless security loss is normally a capital loss, an ordinary loss is permitted to be taken if security holder is a domestic corporation owning a specified minimum percentage of stock of the worthless corporation. *See Textron, Inc. v. U.S.*, 418 F. Supp. 39, 44 (D.R.I. 1976). The legislative history of the predecessor to § 165(g) indicates that the provision was enacted to remove the "peculiar and anomalous results" that followed from treating losses from worthlessness of securities as ordinary losses or deductions, and losses from the sale or exchange of securities as capital losses, because both losses represent a loss of capital in a transaction entered into for profit. *See* H. Rep't No. 1860, 75th Cong., 3d Sess., 18-19 (1938).

Upon review of the purpose and intended effects of these federal laws, the court agrees that Debtor has failed to identify any actual conflict between the Rehabilitation Order and the IRC. The Illinois Insurance Code, pursuant to which the Rehabilitation Order was entered, is not a tax law or a regulation attempting to legislate in the same space as the IRC. Nor does the Illinois Insurance Code directly conflict with the IRC as it does not change the federal prerequisites for taking a worthless stock deduction. A state insurance regulatory law may, as here, affect the ability of a consolidated tax group to utilize a shared tax attribute when one member becomes insolvent, however, the state law is not preempted merely because it has some effect on interests under the IRC.

---

[22] *See* 26 U.S.C. § 165(g).

Nor do the cases cited by the Debtor support the argument the Rehabilitation Order actually conflicts with the IRC. In *Lyeth,* the Supreme Court stated with respect to the tax code that "Congress establishes its own criteria and state law may control only when the federal tax act by express language or necessary implication makes its operation dependent upon state law." *Lyeth*, 305 U.S. at 194. That case, however, clearly observed the distinction between areas of federal and state interest. The issue in *Lyeth* was whether property received from a decedent's estate in settlement of litigation over a will should be deemed "acquired by inheritance," as defined by the IRC, and therefore excluded from the recipient's federally taxable income. In that case, state law would not have characterized the settlement payment as acquired by inheritance, but the Supreme Court held that whether income is subject to federal taxation is determined by federal law, not state law. *See id.* at 191-93. Importantly, the Court noted that state law governed all matters regarding the recipient's property rights, including the decedent's right to make a will, the will's validity, the right to inherit property, and the settlement of contested wills. *See id.; see also, Butner*, 357 U.S. at 55 ("determination of property rights in the assets of a bankrupt's estate [is left] to state law"). Unlike *Lyeth*, which involved a direct conflict between state law and federal law over whether income is acquired by inheritance, here there is no direct conflict between state and federal law. The Rehabilitation Order may affect Debtor's right to take actions that would waste TGIC's assets, and therefore touch upon Debtor's rights in shared Tax Attributes, but the Rehabilitation Order does not directly conflict with federal prerequisites for taking a worthless stock deduction.

Debtor also cites *Shenk*, in which divorced parents each claimed a dependent-child deduction for the same child, despite the fact that the divorce decree authorized the husband to take the deduction. *See Shenk v. C.I.R.*, 140 T.C. 200, 201-02 (T.C. 2013). There, the wife did not execute the federal form necessary to disclaim the deduction, which was a prerequisite to the

husband's claim. *See id.* at 202-03. The husband argued that, based on the divorce decree, he was entitled to claim the exemption even without the signed form, but the tax court disagreed, finding that the divorce decree did not change the federal requirements. *Id.* at 206. Debtor relies on this case to argue that it is the IRC, as opposed to any state court order, that determines one's eligibility to claim a deduction for federal income tax purposes. (*See* D.I. 13 at 17, also citing *Katz v. C.I.R.*, T.C. Summ. Op. 2013-98 (T.C. 2013).) However, much like the Rehabilitation Order, the divorce decree in *Shenk* did not stand in conflict with the IRC; the divorce decree stated conditions for allocating dependent deductions as between the spouses, but it did not change documentation requirements under federal law necessary to claim the deduction. Here, the Rehabilitation Order does not conflict with the IRC either; the Rehabilitation Order precludes waste of an insolvent insurer's assets, but it does not change federal requirements for taking a worthless stock deduction.

*Barnett* is distinguishable as well. In *Barnett*, the Supreme Court considered whether a federal statute granting national banks in small towns the authority to sell insurance preempted a Florida state law prohibiting national banks from selling insurance. *See Barnett*, 517 U.S. at 30. The Court noted that the federal statute authorized national banks to engage in an act that a state statute expressly forbid and noted that "it is clear that Congress, in enacting the federal statute, intended to exercise its constitutionally delegated authority to override certain state laws." *See id.* at 25. Thus, unlike the Rehabilitation Order in the instant case, *Barnett* involved state legislation that directly addressed the same subject matter as federal law and directly conflicted with that law.

The Illinois Insurance Code is neither a state tax law nor a regulation attempting to occupy the same legislative space as the IRC. Nor does it directly conflict with the IRC as it does not change the federal prerequisites for taking a worthless stock deduction. Congress' intent to provide a uniform system of taxation will not "be frustrated and its provisions [r]efused their natural effect"

(*see Crosby*, 530 U.S. at 373) merely because an insurer's assets, upon its insolvency, are protected from waste for the benefit of policy holders under the state's authority to regulate insurance. The court finds no error in the Bankruptcy Court's conclusion that the Rehabilitation Order does not address an area of law that is preempted by the Internal Revenue Code or the Bankruptcy Code. The fact that the Rehabilitation Order or the Illinois Insurance Code has some effect on Debtor's alleged rights to take a worthless stock deduction is insufficient to conclude that the Rehabilitation Order or the Illinois Insurance Code is preempted. (*See* D.I. 14, A728 ¶ 8.)

     (iii)    Collateral Attack

     Finally, Debtor argues that the Bankruptcy Court erred in finding its preemption argument constituted an impermissible collateral attack on the Rehabilitation Order because Debtor never challenged the validity of the Rehabilitation Order and merely sought construction of that order through the Complaint. (*See* D.I. 13 at 18, citing *In re James*, 940 F.2d 46 (3d Cir. 1991)) Debtor argues that the Supreme Court has long recognized that a party's proposed construction of a court order does not constitute a challenge to the order's validity. (*See id.*, citing *St. Louis, K.C. & C.R. Co. v. Wabash R. Co.*, 217 U.S. 247, 250-51 (1910)). In contrast, Appellees argue that the Rehabilitation Order vested the Rehabilitator with control over all of TGIC's assets, and the declaratory relief sought in the Complaint was a mere pretext for Debtor's attempt to "override the Rehabilitation Order and . . . diminish or usurp the jointly-owned NOLs." (*See* D.I. 19 at 2.)

     The Bankruptcy Court concluded that the "Debtor's contention that the Supremacy Clause precludes a determination that the Rehabilitation Order bars Debtor from taking a worthless stock deduction and or abandoning the TGIC stock constitutes an impermissible collateral attack on the Rehabilitation Order." (D.I. 14 at A727, ¶ 7; *see* D.I. 20 at B130, 5/28/14 Hr'g. Tr. at 89:1-3) As the Bankruptcy Court observed, even if Debtor's preemption argument did not constitute a

collateral attack on the Rehabilitation Order, the Supremacy Clause is inapplicable here because the Illinois Insurance Code on which the Rehabilitation Order is based does not address the area of law that is preempted by the Internal Revenue Code or Bankruptcy Code.  Because the court affirms the Bankruptcy Court's conclusion that the Rehabilitation Order is not preempted by federal law, the court does not reach the Bankruptcy Court's conclusion that Debtor's preemption argument constituted an impermissible collateral attack on the Rehabilitation Order.

V.   CONCLUSION

For the foregoing reasons, the court AFFIRMS the Summary Judgment Order and Entry of Judgment.  A separate order consistent with the foregoing shall be entered.

June **27**, 2016                                                    _____
                                                                        UNITED STATES DISTRICT JUDGE